**ANTONIO NIEVES and ELLEN SHUSTER, Plaintiffs**

**v.**

**HESS OIL VIRGIN ISLANDS CORPORATION, Defendant**

Civil No. 1984/336

District Court of the Virgin Islands

Div. of St. Croix

November 1, 1985

JOHN K. DEMA, ESQ., Christiansted, St. Croix, V.I., *for plaintiffs*

BRITAIN H. BRYANT, ESQ., Christiansted, St. Croix, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

Once again Hess Oil Virgin Islands Corporation seeks summary judgment in another case involving the borrowed employee doctrine. Based on the authority of Vanterpool v. Hess Oil V.I. Corp., 766 F.2d 117 (3d Cir. 1985) as interpreted in Thomas v. Virgin Islands Corporation, Civ. No. 83-93, 1985 St. X. Supp. --- (D.V.I. September 18, 1985) and Taylor v. Hess Oil Virgin Islands Corporation, Civ. No. 84-205, 1985 St. X. Supp. --- (D.V.I. September 18, 1985) we will grant the motion for summary judgment. In this opinion we will briefly address two issues not raised in either Thomas or Taylor.

## I. FACTS

Antonio Nieves ("Nieves") was hired by Litwin Panamerican Corp. ("Litwin"), on June 27, 1983. Litwin is essentially a labor broker in the business of supplying workers for temporary assignments at the Hess refinery. Litwin and Hess Oil Virgin Islands Corporation ("HOVIC") have an agreement whereby Litwin provides personnel to perform general maintenance and "turnaround" work at HOVIC's St. Croix refinery. Turnaround work involves a complete unit shutdown in order to inspect and overhaul the refining equipment.

For purposes of the contract Litwin classifies its employees in two categories, Type I or Type II. Type I employees work under the general control and supervision of HOVIC personnel, while Type II employees remain under Litwin's control.

Prior to employment, all Litwin Type I employees are required to sign a form which outlines the conditions of employment as a Type I worker. Nieves never worked for Litwin prior to June 27, 1983. On this date he became a Type I employee by signing a form which specifically stated:

> 1. HOVIC personnel will control, direct and supervise all aspects of your work.
>
> 2. At no time should you receive, or act under instructions from Litwin supervision.
>
> 3. HOVIC will provide you with safety equipment and will ensure that all safety conditions surrounding your work are met.

Nieves attempts to create an issue of fact by claiming he did not sign the rehire form. Attached to HOVIC's motion for summary judgment is a copy of the rehire form purportedly signed by Nieves. Not so surprisingly the signature on the rehire form is remarkably

similar to the signatures of the plaintiff that appear on numerous exhibits attached to his opposition to the motion for summary judgment. See exhibits A–E. This disingenuous attempt to create an issue of fact will not prevent us from granting the motion for summary judgment.

On September 29, 1983, Nieves claims he was injured when he slipped and fell from a cherrypicker. At the time of the accident Nieves worked with David Stanley, another Litwin Type I employee, who gave Nieves direct instructions as to his duties. Stanley in turn was supervised by Earl Neal, a HOVIC supervisor.

On December 3, 1984, Nieves filed suit against HOVIC. HOVIC then moved for summary judgment and we heard oral argument on September 18, 1985. At that time we took the matter under advisement.

## II. DISCUSSION

In Vanterpool v. Hess Oil V.I. Corp., 766 F.2d 117 (3d Cir. 1985), the Third Circuit outlined the criteria needed to establish a borrowing employer as a statutory employer entitled to the benefit of the exclusive remedy provision of the Workmen's Compensation Act. 24 V.I.C. § 284 (1961). These criteria are twofold. First, a borrowed employee must have consented to an express or implied contract of hire with the borrowing employer. Second, the employment must have been of a nature and of sufficient duration so that the employee may be presumed to have evaluated and acquiesced to the risks of his employment. Vanterpool, supra at 127–28.

HOVIC argues that Vanterpool should be applied to this case because Nieves, like Vanterpool, was a Litwin Type I employee working under HOVIC supervision.

In response Nieves raises two arguments which this Court has yet to address. First, Nieves submits that signing a rehire form alone is not sufficient indicia that an employee has consented to a contract of hire with the borrowing employer. Second, Nieves claims Vanterpool can be distinguished because Nieves, whose tenure at the Hess refinery was much shorter than Vanterpool's, did not have an opportunity to evaluate or acquiesce to the risks of his employment.

### A. *Consent to a Contract of Hire*

In this case we hold that Nieves consented to a contract of hire with HOVIC when he signed the rehire form. Nieves would have this court dissect each clause of the rehire form and find no consent if any provision had not been rigidly followed. In essence

493

Nieves, like numerous prior plaintiffs, attempts to put a severely limiting interpretation on the Third Circuit's decision in Vanterpool, supra. As we noted in Thomas, supra, a more fairminded reading of Vanterpool forces us to conclude that the Third Circuit viewed the relationship between Litwin and HOVIC as to Type I employees in an expansive manner. Again, we will follow this approach here and therefore will reject Nieves' first argument.

### B. *Prior Employment*

As stated, Vanterpool had been rehired nine times prior to his accident, while Nieves was allegedly injured during his initial hiring period. Nieves accentuates this distinction arguing he could not acquiesce in the risks of his employment since he worked at the Hess refinery for three months and had never worked at the refinery prior to this hiring period. We disagree. Our reading of Vanterpool favors the conclusion that the number of rehirings is irrelevant so long as the employee worked for the borrowing employer long enough to acquiesce to the conditions of employment.

When the Third Circuit analyzed the acquiescence portion of the two-prong Vanterpool test they determined that Vanterpool had worked at the Hess refinery for sufficient time to evaluate and acquiesce in the risks of his employment. They stated:

> [a]t the time of his injury, Vanterpool had worked continuously at the HOVIC refinery for over two years. He thus had ample opportunity to assess and acquiesce in the risks attendant to his special employment.

Vanterpool, supra at 127.

Likewise we find that Nieves three month tenure at the Hess refinery provided him with ample opportunity to evaluate the risks of his employment. We therefore conclude Nieves had acquiesced to the risks of his employment.

This is not to say that we would never look to prior hiring periods to determine whether an employee had an opportunity to assess the risks of his employment. We do find, however, that Vanterpool is not distinguishable from the facts before us merely because Nieves was injured three months after his initial hiring with Litwin.

### III. CONCLUSION

In summary we find that Nieves satisfied the two-part Vanterpool test and is the borrowed employee of HOVIC. HOVIC is

therefore immune from Nieves' suit. Summary judgment will enter in favor of HOVIC.

## JUDGMENT

THIS MATTER came before the Court on motion for summary judgment pursuant to Fed. R. Civ. P. 56. The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED, ADJUDGED AND DECREED:

THAT Defendant's motion for summary judgment be, and the same, is hereby GRANTED and Plaintiff's complaint is DISMISSED with prejudice.